UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TESTING TECHNOLOGIES, INC., and
MG PREP, INC.,

                           Plaintiffs,

        -against-

MO MEDIA, LLC., PAUL OWENS and           07 CIV 7360
JOHN DOES, 1-10,

                           Defendants.
-----------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS FOR
IMPROPER VENUE OR TO TRANSFER VENUE**


Zeccola & Selinger
45 Webster Avenue
Goshen, New York 10924
(845) 294-2544

Alex Smith, Esq. (AS 5052)
Robert N. Isseks, Esq. (RI 0241)
Of Counsel
6 North Street
Middletown, New York
(845) 344-4322

Attorneys for Plaintiff Testing Technologies, Inc

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF FACTS ........................................................ 1

ARGUMENT ........................................................................................................ 5

    Point 1
    Mo Media's Motion to Dismiss on the Grounds of Improper Venue
    Should be Dismissed ................................................................................ 5

    Point 2
    Mo Media's Motion to Transfer Venue Should be Denied ................................. 14

        A.     The Eastern District of Texas is a Proper Forum ........................... 15

        B.     Balancing of the Transfer Factors Favors Retaining this
               Case in the Southern District ....................................................... 15

               1. Convenience to Witnesses ..................................................... 15

               2. Location of Documents and Ease of Access to
                   Sources of Proof ......................................................... 18

               3. Convenience of Parties ............................................................ 19

               4. Locus of Operative Facts ......................................................... 19

               5. The Availability of Process to Compel Attendance of
                   Unwilling Witnesses ................................................... 19

               6. Relative Means of the Parties .................................................. 20

               7. Plaintiffs' Choice of Forum ..................................................... 20

               8. Trial Efficiency and the Interests of Justice ............................. 21

        Conclusion ............................................................................... 21

    CONCLUSION ................................................................................... 21

## INTRODUCTION AND SUMMARY OF FACTS

Plaintiff, Testing Technologies, Inc and MG Prep, Inc., files this response to the motion of Defendant Mo Media, Inc. ("Mo Media") to dismiss for improper venue, or, alternatively, to transfer venue.

Plaintiffs Testing Technologies, Inc. ("Testing Technologies) and MG Prep, Inc. ("MG Prep") and collectively "Plaintiffs") filed this action against Mo Media, Paul Owens, and John Does 1-10, alleging violations of the Lanham Act 15 U.S.C. § 1125(a), New York General Business Law §349 and 350-a, common law unfair competition, common law fraud, and misrepresentation.

The facts in support of this Memorandum are contained in the accompanying Declaration of Sean Selinger, and will only be summarized here.

Testing Technologies is an internet test preparation company.  It electronically delivers test preparation products for persons intending to take the GMAT(Graduate Management Admissions Test), GRE (Graduate Record Examination), LSAT and SAT tests.  Its customers range from individual persons to schools and colleges and other test preparation companies.

MG Prep is also an internet test preparation company, and its principal place of business is 138 West 25th Street, New Yor City.  It has been harmed in the same way as Testing Technologies by Mo Media's illegally deceptive websites and business practices.

Most (over 75%) of Testing Technologies customers are obtained via internet

-1-

search engines, including Google. New York City yields more customers for Testing Tech than any other City in the country.

In 2001, Mo Media, another internet test preparation company in competition with both Plaintiffs, began displaying websites that posted glaringly false and inaccurate information that gave false promises to potential customers, such as claiming to have "secrets" for taking the subject exams. Its websites made numerous claims that other test preparation companies – though it did not list any by name – could not deliver the results that Mo Media could deliver. Mo Media's emphasis upon the fact that it did not list either Plaintiff by name ignores the reality that there are only about 5 to 10 large internet and book test preparation companies in the United States; nearly all of them are based in New York City.

By the year 2004, an internet user in the Southern District of New York could log onto Mo Media's websites and buy its products directly from Mo Media. Schools and colleges in the Southern District were linking on to Mo Media's websites under the false impression that it was a not-for-profit entity. Mo Media admits that it had customers in the Southern District. Mo Media concededly sent e-mail solicitations to schools and colleges in the Southern District inviting the recipient to link with its fraudulent website. Schools and colleges in the Southern District have information on their own websites indicating that Mo Media was a not-for-profit entity; these websites were and are providing links to Mo Media's fake promotional websites.

Given that Mo Media is in the business of selling exam "secrets", using aggressive and deceptive sales techniques that prey on young students, most schools would be hesitant to link to the Mo Media site itself.  Instead, Mo Media has built a series of deceptive non-profit promotional proxy sites and then spammed schools and libraries nationwide soliciting links to their proxy sites under the guise of nonprofit status.  This has proven enormously successful and Mo Media has acquired approximately 20,000 links in the process (more than most Fortune 500 companies and top universities).

Links from schools and colleges are exceptionally valuable for the granting of a high ranking by Google algorithm.  This means that an internet user browsing for certain standardized test preparations on Google would be encountering highlighted and targeted links, the highest ranked links, to Mo Media's proxy websites.  Currently, Mo Media is number 1 and number 4 among for-profit companies listed under the term "SAT" in Google.  On GMAT and GRE, Mo Media and its affiliate site are  number 1 and number 2.  Mo Media is in the top five in Google results among test preparation companies.  This high ranking – fraudulently obtained – substantially harms both Plaintiffs in the Southern District of New York by, in effect, stealing customers located in the Southern District.  These fake websites have reduced traffic, and hence revenue, to both Testing Technologies and MG Prep.

Mo Media responded to the lawsuit from Testing Technologies by comprehensively rewriting its sites and removing most of the offending language, thus

tacitly acknowledging the deceptive nature of the advertisements.

Faced with Plaintiffs' overwhelming adverse evidence, Mo Media has turned to a campaign of tortious interference and intimidation against Testing Technologies, in the process harming MG Prep.  Because of Mo Media's elevated, yet fraudulent, status with Google, it was able to link to sites beneath Testing Technologies in order to boost such sites above Testing, and then sent misleading e-mails to schools, colleges and companies linked to Testing Technologies in order to further lower the links -- this is a process known as "Google bombing".  In 2008, Mo Media has successfully knocked Testing Technologies' main website off the front page/first ten listing in Google for the first time since 1999.

New York City is the de facto capital of the standardized test preparation industry with Kaplan, Princeton Review, Manhattan GMAT (MG Prep), McGraw Hill and the Graduate Management Admissions Council.  Thus, the central locus of test prep companies damaged by Mo Media's false claims and proxy sites is the Southern District of New York.

Furthermore, the Southern District is highly populous and contains a large number of schools and universities targeted by Mo Media's false proxy promotional campaign, perhaps the most of any individual Federal jurisdiction.  New York State perhaps contains the highest number of schools linking to Mo Media proxy sites with nearly half of all SUNY schools duped by Mo Media's link solicitation spam campaign.

-4-

The actions of Mo Media's corporate (non-proxy) sites directly target New York residents.  Mo Media concedes that it "does produce test preparation materials for two New York specific tests".  Many of the false claims Mo Media makes that are the subject of this lawsuit (and taken down by Mo Media once the suit was filed) are repeated verbatim on the sites specifically targeting New York students, such as their Regents Exam Secrets site..

## ARGUMENT

### Point 1
### Mo Media's Motion to Dismiss on the Grounds of Improper Venue Should Be Dismissed

Because the Lanham Act does not have its own venue provision, the general venue statute is applicable. *See, Woodke v Dahm,* 70 F.3d 983, 985 (8th Cir. 1995).

The pertinent venue statute, 28 U.S.C. § 1391(b), provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Plaintiffs rely entirely on § 1391(b)(2), which allows an action to be litigated in a district in which a substantial part of the acts or omissions giving rise to the claim occurred.

Mo Media concedes on this motion that "[i]f Mo Media had directed its marketing against a Plaintiff in the Southern District of New York, venue might lie in the Southern

District of New York."  The above summarized facts, described in detail in the

accompanying Declaration, reveal that Mo Media has quite obviously directed its

marketing against Plaintiffs in the Southern District of New York.  Again, Mo Media

smugly evades the fact that there are only about 5 to 10 large internet and book test

preparation companies in the United States; nearly all of them are based in New York

City.  The harm caused to Plaintiffs by Mo Media's illegal practices is made very clear in

the accompanying Declaration.

"In considering a motion to dismiss for lack of proper venue under Rule 12(b)(3),

[courts] 'accept[] the plaintiff['s] well-pled factual allegations regarding venue as true,

draw[] all reasonable inferences from those allegations in the plaintiff['s] favor, and ...

resolve[] any factual conflicts in the plaintiff ['s] favor.'" *Great Socialist People's Libyan

Arab Jamahiriya v Miski,* 496 F.Supp.2d 137, 141 (D.D.C.,2007), *quoting Quarles v Gen.

Inv. & Dev. Co.,* 260 F.Supp.2d 1, 8 (D.D.C.2003)

"Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district

where the *most substantial* portion of the relevant events occurred, nor does it require a

plaintiff to establish that every event that supports an element of a claim occurred in the

district where venue is sought."*Miski,* 496 F.Supp.2d at 142, *quoting Modaressi v Vedadi,*

441 F.Supp.2d 51, 57 (D.D.C. 2006) "The plaintiff is not required to establish that his

chosen venue 'has the most substantial contacts to the dispute; rather, it is sufficient that a

substantial part of the events occurred [here], even if a greater part of the events occurred

elsewhere.'" *National Council on Compensation Ins., Inc. v Caro & Graifman, P.C.,* 259 F.Supp.2d 172, 177 (D.Conn. 2003), *quoting  Indymac Mortgage Holdings, Inc. v Reyad,* 167 F.Supp.2d 222, 237 (D.Conn. 2001)

Federal courts have held that "'venue under section 1391(a)(2) in misrepresentation and fraud cases . . . is proper in the district to which a document containing the misrepresentation at issue was sent.'" *Estate of Moore v Dixon,* 460 F.Supp.2d 931, 936 (E.D.Wis.,2006), *quoting Mercantile Capital Partners v Agenzia Sports, Inc.,* 2005 WL 351926 at *5 (N.D.Ill.2005).  The defendants' misrepresentations in the *Estate of Moore* caused the plaintiff to make what it mistakenly believed to be a charitable donation - at bar, the misrepresentation (and resultant "donation" to Mo Media) was on a far grander scale, but the salient point is that substantial "donations" were made by unknowing victims in the Southern District of New York.[1]

The federal courts have adopted a spectrum analysis when considering both venue and personal jurisdiction issues in internet-based transactions.  At the bottom end of the spectrum are cases in which the target state receives simply passive websites that contain information only.  In the middle are more interactive websites, combined with other activity in the target state.  At the high end of the spectrum are websites where products and services can be purchased in the target state directly from the website displayer.

---

[1]  *Accord, see Tefal, S.A. v Products Int'l Co.,* 529 F.2d 495, 496 n. 1 (3d Cir.1976) (concluding that "[c]laims under the Lanham Act arise not where an allegedly deceptive label is affixed to the defendant's product but where a customer buys the product").

As will be seen, Mo Media with its highly interactive, direct sales websites in the Southern District, coupled with its electronic solicitations to customers in the Southern District, the epicenter of the test preparation industry, make it clear that Mo Media is at the high end of the spectrum, thus legitimizing venue in the Southern District.

In deciding whether websites in the Southern District justify venue here, this Court has applied the same principles developed to determine whether a website confers personal jurisdiction. *Hsin Ten Enterprise USA, Inc. v Clark Enterprises,* 138 F.Supp.2d 449, 460 -461 (S.D.N.Y. 2000)[2]

The *Hsin Ten* Court observed that "courts have been unwilling to find venue proper where it is based solely on the allegation that the defendant maintains a passive, albeit infringing, website." *Hsin Ten,* 138 F.Supp.2d at 460.[3] "The mere fact that a person can gain information on the allegedly infringing product [by viewing a passive website] is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in New York." *Hsin Ten,* 138 F.Supp.2d at 460-

---

[2] *Citing Metropolitan Opera Ass'n v Naxos of America,* 2000 WL 987265, at *3-*4 (SDNY) (relying on cases involving websites and personal jurisdiction to determine proper venue); *Miller v Asensio,* 101 F.Supp.2d 395, 406-07 (D.S.C.2000) (applying distinction between passive and interactive websites to venue context); *IA, Inc. v Thermacell Techs., Inc.,* 983 F.Supp. 697, 701 (E.D.Mich.1997) (rejecting defendants' argument that cases involving personal jurisdiction caused by interactive website are inapposite when dealing with venue question).

[3] *Citing Miller,* 101 F.Supp.2d at 406 ("[T]he website in this case is passive, rather than interactive, and thus should not support a finding that venue in this forum is proper."); *Shapiro v Santa Fe Gaming Corp.,* 1998 WL 102677, at *2 (N.D.Ill. 1998) ("[I]t is well-settled that the operation of a toll-free telephone number and a passive, non-advertising website, without more, is insufficient to satisfy jurisdiction or venue.").

461, *quoting Bensusan Restaurant Corp. v King,* 937 F.Supp. 295 (S.D.N.Y. 1996),

*aff'd,* 126 F.3d 25 (2nd Cir. 1997).

The *Hsin Ten* Court held, however, "the significance of the web sites shifts to the

extent that there is interaction between the [defendant] and New York residents." *Hsin*

*Ten,* 138 F.Supp.2d at 461, *quoting* Citigroup Inc. v City Holding Co., 97 F.Supp.2d 549,

567 (SDNY 2000) "Courts associate interactive websites with advertising purposefully

directed toward the forum state." *Hsin Ten,* 138 F.Supp.2d at 461.[4]  The *Hsin Ten* Court

went on to hold that the ability to order directly from the website, download applications

to become an "independent affiliate", and ask questions online, was a level of interactivity

supporting venue over a trademark infringement claim in the Southern District. *Hsin Ten,*

138 F.Supp.2d at 461.

In *Hollins v U.S. Tennis Ass'n,* 469 F.Supp.2d 67, 74 -75 (E.D.N.Y.,2006), an

Eastern District court observed that for internet-based venue analysis, courts examine the

nature and quality of the activity:[5]

> At one end of the spectrum are "passive" websites that display but do not permit an
> exchange of information . . . 2005 WL 612848, at *4. "At the other end of the
> spectrum are cases in which the defendant clearly does business over the
> Internet.... Occupying the middle ground are 'interactive' web sites, which permit
> the exchange of information between the defendant and web site viewers." Hsin
> Ten Enter. USA, Inc. v. Clark Enters., 138 F.Supp.2d 449, 456 (S.D.N.Y.2000).

---

[4]  *Citing IA, Inc.,* 983 F.Supp. at 701 (finding venue proper where misrepresentations that
underlie trademark infringement claim are made on an interactive website).

[5]  *Citing Alpha Int'l, Inc. v T-Reprods., Inc.,* 2003 WL 21511957, at *3 (S.D.N.Y. 2003).

*Hollins,* 469 F.Supp.2d at 74.[6]  Noting that the website system before was at least

"interactive" because it permitted the "exchange of information between the defendant

and web site viewers", the *Hollins* court held that the fact that players in New York could

manage their own tournament schedules, enter or withdraw from tournaments and pay

fines via the defendant's website system could support a finding that the defendant was

doing business in New York. *Hollins,* 469 F.Supp.2d at 75.[7]

　　　Mo Media's targeting of customers in the Southern District can be partially

analogized to the defendant's promotional website in *Publications Intern., Ltd. v*

*Burke/Triolo, Inc.,* 121 F.Supp.2d 1178, 1182 -1183 (N.D.Ill. 2000) The defendant

contended that its website was merely informational, but the court found that the targeted

state's users who access the website can fill out a form request for the catalog and submit

it directly to the defendant who also advertised a national listing of clients on the website,

including two large and well-known targeted-state corporations.  Although the defendant

---

[6]  *Citing Alloject PLC v Vantage Associates,* 2005 WL 612848, at *4 (SDNY) and *Hsin Ten,* 138 F.Supp.2d at 456.

[7]  *Citing Allojet,* 2005 WL 612848, at *5-*6 (defendant's interactive website activity in addition to other activities in New York could provide basis for general jurisdiction under section 301); *Shottenstein v Shottenstein,* 2004 WL 2534155, at *11 (S.D.N.Y. 2004) (denying motion to dismiss based on interactive website advertising plus substantial sales to New York residents); *Pieczenik v Cambridge Anti. Tech. Group,* 2004 WL 527045, at *1 n. 9 (S.D.N.Y.) (noting that allegation of highly interactive website accessible to New York residents would provide basis for jurisdiction); *Thomas Pub. Co. v Industrial Quick Search, Inc.,* 237 F.Supp.2d 489, 491 (S.D.N.Y. 2002) (plaintiffs adequately alleged jurisdiction under CPLR Section 301 based on allegation that defendant regularly solicited business in New York through its interactive website); *Brown v Grand Hotel Eden,* 214 F.Supp.2d 335, 339 (S.D.N.Y. 2002) (hotel website that permitted reservations to be confirmed automatically supported finding that hotel was doing business in New York).

argued that no actual sales were transacted on line, the court asked rhetorically why would the defendant send catalogs to the target state except to generate target-state sales sales? The court concluded that the website was promotional, and was intentional and continuous business contact that makes personal jurisdiction over the defendant proper in the target state.[8] Mo Media's promotional gambits in the Southern District are far more extensive than the modest website at issue in *Publications Intern*. Moreover, Mo Media's website allows users to request the product at issue, not just a catalog containing it or inclusion on a mailing list.[9]

The case at bar can also be compared with *Varitalk, LLC v Lahoti,* 2007 WL 1576127, *4 -6 (N.D.Ill. 2007) There the defendant described its website as "passive", but the court determined that it was best characterized as a "portal", a "super" website that provides a wide variety of services -- access to internet search engines, e-mail accounts, discussion groups, web sites categorized by topic, and directories. Portals generate their income by selling online advertising space. Portals fall into the middle ground of the sliding scale because they are designed for user interaction and their success hinges on the number of users interacting with the site. Although they do not offer products or goods

---

[8] *Accord, see Maritz, Inc. v Cybergold, Inc.,* 947 F.Supp. 1328, 1333 (E.D.Mo.1996) (The defendant was subject to personal jurisdiction based on website that solicited users to join its mailing list.).

[9] *See, Litmer v PDQUSA.com,* 326 F.Supp.2d 952 (N.D.Ind. 2004) (where users of the website can provide defendant with every piece of information necessary to complete a sale except a credit card number, the defendant has purposefully directed its activities at the forum state by soliciting orders, although not in the Internet context)

for sale, portals are themselves a form of product or service. The court determined that defendant's portal website "invited users to interact for commercial purposes" and earned revenue based on the number of [visiting] users", including users who clicked on hyperlinks. The court concluded that the defendant's portal website "was commercial and had a high degree of interactivity." Importantly - when compared with the case at bar - the court found that the portal "included links to stores located in or doing substantial business in [the targeted state], and [the defendant] must have anticipated that [target-state] users would visit his site." *Varitalk,* 2007 WL 1576127, *4 -5. Likewise, Mo Media's website system includes links to entities in the test preparation industry doing substantial business in the Southern District, and Mo Media must anticipate that Southern District users would frequent its sites.

The *Varitalk* court also emphasized that the defendant's portal was alleged to have intentionally created confusion amongst target-state competitors, just as Plaintiffs at bar have alleged in convincing terms that Mo Media's deceptions have had substantial impact upon Southern District competitors. *Varitalk,* 2007 WL 1576127, *6. The *Varitalk* court determined that because of the confusion it was reasonable to infer that a substantial number of target-state users were misdirected to the defendant's website, just as Testing Technologies alleges that a substantial number of Southern District users are being misdirected to the Mo Media empire. The court determined that user confusion based upon deception was a tort that occurs where the injury occurs, even though the offending

website was operated over a thousand miles away. *Varitalk,* 2007 WL 1576127, *6.

Even courts not utilizing the spectrum analysis have issued decisions which provide support for laying venue at bar in the Southern District. *See, Young Again Products, Inc. v Acord,* 307 F.Supp.2d 713, 718 (D.Md. 2004) (When internet traffic was directed into a judicial district and resulted in sales, venue is proper in that district.); *International Truck and Engine Corp. v Quintana,* 259 F.Supp.2d 553, 558 (N.D.Tex. 2003) (In a trademark action where plaintiffs alleged that defendants used their trademark on defendants' website, which was accessible in the Northern District of Texas, and where plaintiffs were allegedly doing business in the Northern District of Texas and were allegedly injured there, then venue is proper in such district.); *IA, Inc. v Thermacell Techs., Inc.,* 983 F.Supp. 697, 700-01 (E.D.Mich. 1997) (Where a website, accessible to any computer user in the forum district, contained the alleged misrepresentations that led to confusion in the forum over the adequacy of the product, and resulted in a Lanham Act cause of action, the court found venue proper under the "substantial part of the events" test because the alleged misrepresentations that underlaid the Lanham Act claim appeared on an interactive web site in the forum state, which is also where the plaintiff's similar products were located.

*Mattel, Inc. v Adventure Apparel,* 2001 WL 286728, *1 (S.D.N.Y. 2001) is instructive.  There, an Arizona swim wear company utilized a California company to create a website which resulted in a single sale of a trademark infringing product in the

Southern District of New York. Noting that "[t]he principles which govern the personal jurisdiction inquiry in cases involving infringing activity conducted via the internet are also applicable to the venue issue", this Court held that venue is proper in the Southern District based on the single internet sale of an allegedly infringing product. *Mattel,* 2001 WL 286728, *4-5.

Venue is clearly proper in the Southern District of New York.

### Point 2
### Mo Media's Motion to Transfer Venue Should Be Denied

Federal district courts may transfer a civil case to another district if transfer would be in the interest of justice and benefit "the convenience of the parties and witnesses." 28 U.S.C. § 1404(a). Under the statute, a two-step inquiry is required.

First, the Court must establish whether the case could have been filed in the transferee district and, if so, then secondly determine whether the convenience and the interests of justice favor transfer. *See, e.g., Fuji Photo Film Co., Ltd. v Lexar Media, Inc.,* 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). In the Second Circuit, these factors include: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiffs choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Am.*

-14-

*Eagle Outfitters, Inc. v Tala Bros. Corp.,* 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006).

### A. The Eastern District of Texas is a Proper Forum

Plaintiffs concede that this case could be brought in Texas, but strongly object to transferral in the interest of justice.

### B. Balancing of the Transfer Factors Favors Retaining this Case in the Southern District

District courts have broad discretion in determining whether transfer is warranted; in "performing the analysis, however, the district court must 'give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum.'" *American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v Lafarge North America, Inc.,* 474 F.Supp.2d 474, 480-481 (S.D.N.Y.,2007), *quoting MK Sys. v Schmidt,* 2005 WL 590665, at *3 (S.D.N.Y. 2005). "The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate." *Lafarge,* 474 F.Supp.2d at 481, *citing Reliance Ins. Co. v Six Star, Inc.,* 155 F.Supp.2d 49, 56 (S.D.N.Y.2001).

Mo Media's motion papers evade MG Prep's status as a Plaintiff, and ignore Testing Technologies physical proximity near and substantial business in the Southern District.

### 1. Convenience to Witnesses

It has been held that this factor is arguably the most important in deciding transfer

-15-

motions. *See, AEC One Stop Group, Inc. v CD Listening Bar, Inc.,* 326 F.Supp.2d 525, 529 (S.D.N.Y. 2004).

The Mo Media Texas witnesses listed in its motion papers are nearly all family members or employees. Mo Media's claim that it "would have no legal means to compel their testimony" is somewhat disingenuous given the financial and family relationships with its witnesses. Mo Media easily has the financial wherewithal to accommodate their attendance in New York. Through its network of promotional proxies, Mo Media gets more traffic than Kaplan.com (based on data from compete.com) and should therefore have revenues in excess of $2 million per year. Testing Technologies is a comparatively smaller company with approximately $500,000 in revenues and high R&D expenditures. Furthermore, former employees and family members are not objective third-party witnesses and their testimony will have minimal probative value.

In contrast, nearly all of the non-party witnesses with objective and relevant information are based in New York. "It is not the number of prospective witnesses that determines the appropriateness of a transfer but, rather, the materiality of their anticipated testimony." *Dwyer v General Motors Corp.,* 853 F. Supp. 690, 693 (S.D.N.Y. 1994) A number of plaintiffs' key witnesses are in New York State:

a) Sue Brissette, the former Mo Media employee, is expected to testify regarding Mo Media operations.

b) Google, a key witness, has two offices in New York City and none in

-16-

the Eastern District of Texas.  Google's second largest office is in Chelsea and

employs an estimated 500 employees.  This is not simply a sales office, like the one in

Dallas, but constitutes a programming and technical center with researchers familiar

with the pagerank algorithm.  Google has pertinent information relating to Mo

Media's advertising and exploitation of its search results.

c)  One of TestPrepReview's principle advertisers, NextStudent, has

offices in Rochester, NY.

d)  Kaplan, McGraw Hill and Princeton Review (all in New York) most

likely will be called as witnesses to counter the statements made on Mo Media sites

that Mo Media is the only company that "teaches the test" and "Our GMAT Secrets

study guide is written by ACTUAL Graduate Management Admissions Test experts".

Also, these companies, along with Barrons Education Publishing (Suffolk County)

and Simon & Schuster, have suffered from Mo Media's unfair competition relating to

link solicitation and can testify about the value of search engine traffic and the harm

that Mo Media has done to their businesses.

e)  Schools located in the Southern District that will be called as

witnesses because they were targeted by MoMedia and/or they posted links to Mo

Media's proxy pages include Fordham University, Westchester County Community

College, Rockland County Community College, Orange County Community College,

City University of New York, New York Medical College, Monticello High School,

Carmel High School, and Washingtonville High School.

  f)  One Mo Media proxy claimed to be run by a "Jack Anderson" who "taught at Columbia University".

  g)  The "Avner Foundation", an organization used on another Mo Media website was run by a "Levi Bryn" claiming an address in New York City.

  Thus, while many potentials schools and colleges linking to Mo Media proxies are in the Southern District of New York, we have found not even one such school in the Eastern District of Texas.  The Eastern District of Texas is predominately rural, geographically isolated, relatively impoverished and has a much lower concentration of colleges and universities.  It contains neither Dallas nor Houston, but simply a few small cities such as Beaumont (pop. 110,000), Plano (pop. 83,000), Tyler and Texarkana.  The Southern District of New York has a population well over ten times the estimated population of the Eastern District of Texas.

  The ratio of schools and higher educational institutions is even more sharply skewed in favor of the Southern District, as many have links to Mo Media proxies including Fordham, Westchester County Community College and Rockland County Community College.

### 2. Location of Documents and Ease of Access to Sources of Proof

  The foregoing demonstrates that the bulk of relevant documents will be in the Southern District. Mo Media has the resources to transfer files to New York and this

factor certainly does not support transferring this case to Texas.

### 3. Convenience of Parties

MG Prep is located in the Southern District of New York.  Testing Technologies is located in Wilton, Connecticut, a town in Fairfield County adjacent to the Westchester County border, and does a substantial amount of business in the Southern District.  This factor dictates that the case remain here.

### 4.  Locus of Operative Facts

The foregoing demonstrates unequivocally that the locus of operating facts is in the Southern District of New York, where the Plaintiff and a large number of targeted schools and colleges exist; again, this District is the epicenter of the test preparation industry.

The locus of operative facts is a "primary factor" in determining whether to transfer venue. *Lafarge,* 474 F.Supp.2d at 485, *citing Mattel, Inc. v Procount Bus. Servs.,* 2004 WL 502190, at *4 (S.D.N.Y. 2004).  "Along with the location of material witnesses, this has a bearing on where the 'center of gravity' of the action rests." *Lafarge,* 474 F.Supp.2d at 485, *citing Foothill Capital Corp. v Kidan,* 2004 WL 434412, at *1 (S.D.N.Y. 2004)

Based upon the foregoing, it is frivolous to claim that the center of gravity of this case is in Beaumont, Texas.

### 5.  The Availability of Process to Compel Attendance of Unwilling Witnesses.

As stated above, since Mo Media's present and former employees and family

-19-

members are all non-objective parties and have familiar relations with Mo Media, there

should be minimal necessity for the use of process.  In contrast, moving the case to Texas

would seriously impact the Plaintiffs' ability to call the many non-party witnesses

(described above) at trial.  The case would be close to impossible for the Plaintiffs to

successfully prosecute in Texas, while retaining the action here should have only negligible

impact upon Mo Media.

### 6.  Relative Means of the Parties

Mo Media, through its network of promotional proxies, gets more traffic than

Kaplan.com (based on data from compete.com).  Thus, it should have revenues in excess of

$2 million per year. Given the minimal costs (traffic is delivered primarily through proxies),

it is reasonable to believe that Mo Media has vast sums to spend on litigation.  Testing

Technologies is a comparatively smaller company with approximately $500,000 in annual

revenues and high R&D expenditures.

### 7.  Plaintiffs' Choice of Forum

"A plaintiff's choice of forum is to be given substantial weight and "should not be

disturbed unless the balance of convenience and justice weighs heavily in favor of

defendant's proposed forum." *Lafarge,* 474 F.Supp.2d at 486, *citing Micromuse Inc. v*

*Aprisma Management,* 2005 WL 1241924, at *3 (SDNY)   "This deference is even greater

where there is a material connection or significant contact between the forum state and the

events allegedly underlying the claim, or where the plaintiff's chosen forum is its principal

place of business." *Lafarge,* 474 F.Supp.2d at 486, *citing MK Systems, Inc. v Schmidt,* 2005 WL 590665, at *6 (SDNY).

Mo Media has not come close to demonstrating that "justice weighs heavily in favor of [Texas]". More importantly, there is undeniably "significant contact between the [Southern District] and the events underlying the claim".

8. Trial Efficiency and the Interests of Justice

Mo Media has made no showing that the Southern District somehow lacks trial efficiency, a counterintuitive proposition since, again, the Southern District is the epicenter of the test preparation industry.

Conclusion

As in *Lafarge,* "[A]ll of the factors either weigh in plaintiff's favor, albeit with varying strengths, or are neutral. As none of the factors clearly weighs in defendant's favor, defendant has fallen short of its burden of showing by clear and convincing evidence that transfer is warranted." *Lafarge,* 474 F.Supp.2d at 490-491.

**Conclusion**

The Defendants motions should be denied in their entirety.

-21-

Dated: Goshen, New York
      January 31, 2008

                            Respectfully submitted,

                            Zeccola & Selinger
                            45 Webster Avenue
                            Goshen, New York 10924
                            (845) 294-2544

                            s/*Alex Smith*

                            _____
                            Alex Smith, Esq. (AS 5052)
                            Robert N. Isseks, Esq. (RI 0241)
                            Of Counsel
                            6 North Street
                            Middletown, New York
                            (845) 344-4322

                            Attorneys for Plaintiff Testing Technologies, Inc