UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TESTING TECHNOLOGIES, INC.<br><br>and<br><br>MG PREP, INC.,<br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>MO MEDIA, LLC, PAUL OWENS, and JOHN DOES 1-10,<br><br>　　　　　　Defendants. | ECF<br><br>Civil Action No. 07 Civ 7360 |

**<u>REPLY DECLARATION OF PAUL OWENS</u>**

# EXHIBIT A

# Domain Statute
## UDRP Disputes

Home | Blog | Alleged Cybersquatters Database | Someone Took Your domain? Report it! | UDRP Rules & Decisions

Source: National Arbitration Forum

NATIONAL ARBITRATION FORUM

DECISION

Paul Owens v. LaPorte Holdings Inc.
Claim Number: FA0501000406994

**PARTIES**

Complainant is **Paul Owens** ("Complainant"), 5655 Lori Lane, Beaumont, TX 77713. Respondent is **LaPorte Holdings Inc.** ("Respondent"), ATTN: testpreview.com, c/o Nameking, Inc., 2202 S. Figueroa St., Suite 721, Los Angeles, CA 90023.

**REGISTRAR AND DISPUTED DOMAIN NAME**

The domain name at issue is **<testpreview.com>**, registered with **NameKing, Inc.**

**PANEL**

The undersigned certifies that he or has acted independently and impartially and to the best of his or knowledge has no known conflict in serving as Panelist in this proceeding.

Louis E. Condon as Panelist.

**PROCEDURAL HISTORY**

Complainant submitted a Complaint to the National Arbitration Forum electronically on January 21, 2005; the National Arbitration Forum received a hard copy of the Complaint on January 27, 2005.

On January 28, 2005, NameKing, Inc. confirmed by e-mail to the National Arbitration Forum that the domain name <testpreview.com> is registered with NameKing, Inc. and that Respondent is the current registrant of the name. NameKing, Inc. has verified that Respondent is bound by the NameKing, Inc. registration agreement and has thereby agreed to resolve domain-name disputes

brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On February 2, 2005, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of February 22, 2005 by which Respondent could file a response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@testpreview.com by e-mail.

Having received no Response from Respondent, using the same contact details and methods as were used for the Commencement Notification, the National Arbitration Forum transmitted to the parties a Notification of Respondent Default.

On March 1, 2005, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed Louis E. Condon as Panelist.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the National Arbitration Forum has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent." Therefore, the Panel may issue its decision based on the documents submitted and in accordance with the ICANN Policy, ICANN Rules, the National Arbitration Forum's Supplemental Rules and any rules and principles of law that the Panel deems applicable, without the benefit of any Response from Respondent.

## RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A.  Complainant makes the following assertions:

1.  Respondent's <testpreview.com> domain name is confusingly similar to Complainant's TESTPREPREVIEW.COM mark.

2.  Respondent does not have any rights or legitimate interests in the <testpreview.com> domain name.

3.  Respondent registered and used the <testpreview.com> domain name in bad faith.

B.  Respondent failed to submit a response in this proceeding.

## FINDINGS

Since July 2003, Complainant has used the <testprepreview.com> domain name to host a website that offers free information and practice tests for various exams. Complainant alleges that it has spent much time and money promoting its website and its TESTPREPREVIEW.COM mark to universities,

libraries, and other organizations. Some of the organizations that Complainant contacted posted links on their websites that mistakenly directed Internet users to the then-unregistered <testpreview.com> domain name rather than to Complainant's website. However, the disputed domain name was no longer available when Complainant subsequently attempted to register it.

Respondent registered the <testpreview.com> domain name on July 10, 2004. The domain name resolves to a website without any content. Complainant asserts that Respondent chose and registered the disputed domain name by engaging in a new form of cybersquatting known as "pagerank hijacking," which alludes to a search engine algorithm that assesses the importance of a web page by counting the number of links that point to the page. Complainant alleges that Respondent uses this technology to locate unregistered domain names to which mistyped links point. Respondent proceeds to register those domain names that are targeted by the largest number of mistyped links.

DISCUSSION

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

In view of Respondent's failure to submit a response, the Panel shall decide this administrative proceeding on the basis of Complainant's undisputed representations pursuant to paragraphs 5(e), 14(a) and 15(a) of the Rules and draw such inferences it considers appropriate pursuant to paragraph 14(b) of the Rules.

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1)  the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
(2)  Respondent has no rights or legitimate interests in respect of the domain name; and
(3)  the domain name has been registered and is being used in bad faith.

**Identical and/or Confusingly Similar**

Registration of a mark with a governmental authority is unnecessary for a complainant to establish rights in a mark if a common law mark has been established. *See McCarthy on Trademarks and Unfair Competition*, § 25:74.2 (4th ed. 2002) (The ICANN dispute resolution policy is "broad in scope" in that "the reference to a trademark or service mark 'in which the complainant has rights' means that ownership of a registered mark is not required–unregistered or common law trademark or service mark rights will suffice" to support a domain name complaint under the Policy); *see also Great Plains Metromall, LLC v. Creach*, FA 97044 (Nat. Arb. Forum May 18, 2001) (finding that the Policy does not require "that a trademark be registered by a governmental authority for such rights to exist").

Complainant established by extrinsic proof in this proceeding that it has rights in the TESTPREPREVIEW.COM mark through ownership of a common law mark. A common law mark is established when a complainant's mark becomes distinctive and acquires secondary meaning. Complainant established that through Complainant's continuous and exclusive use of the TESTPREPREVIEW.COM mark in commerce since July 2003 and through Complainant's

expenditure of time and money in promotion of the mark, Complainant's mark has acquired secondary meaning and has become distinctive. Thus, Complainant has established secondary meaning in the TESTPREPREVIEW.COM mark through its continuous and exclusive use. The Panel finds, therefore, that Complainant has established common law rights in the TEXTPREPREVIEW.COM mark pursuant to Policy ¶ 4(a)(i). See *Tuxedos By Rose v. Nunez*, FA 95248 (Nat. Arb. Forum Aug. 17, 2000) (finding common law rights in a mark where its use was continuous and ongoing, and secondary meaning was established); see also *S.A. Bendheim Co., Inc. v. Hollander Glass*, FA 142318 (Nat. Arb. Forum Mar. 13, 2003) (finding that the complainant established rights in the descriptive RESTORATION GLASS mark through proof of secondary meaning associated with the mark); see also *Nat'l Ass'n of Prof'l Baseball Leagues v. Zuccarini*, D2002-1011 (WIPO Jan. 21, 2003) (finding that the complainant had provided evidence that it had valuable goodwill in the <minorleaguebaseball.com> domain name, establishing common law rights in the MINOR LEAGUE BASEBALL mark).

The domain name that Respondent registered, **<testpreview.com>**, is confusingly similar to Complainant's TESTPREPREVIEW.COM mark because the domain name merely removes the letters "pre," creating a domain name that is visually and phonetically similar to the mark. The removal of letters from a mark to create a domain name that is easily confused with the mark does not distinguish the disputed domain name. Thus, the Panel finds that the domain name is confusingly similar to the TESTPREPREVIEW.COM mark. See *VeriSign, Inc. v. VeneSign C.A.*, D2000-0303 (WIPO June 28, 2000) (finding that the pronunciation and spelling between the <venesign.com> domain name and the complainant's mark, VERISIGN, were so close that confusion could arise in the mind of the consumer); see also *Am. Online, Inc. v. Peppler*, FA 103437 (Nat. Arb. Forum Feb. 22, 2002) (finding the words "quest" and "crest" to be similar in sound and, thus, finding that the <mapcrest.com> domain name was confusingly similar to the complainant's MAP QUEST mark); see also *Am. Online, Inc. v. iDomainNames.com*, FA 93766 (Nat. Arb. Forum Mar. 24, 2000) (finding that Respondent's domain name <go2AOL.com> was confusingly similar to Complainant's AOL mark).

The Panel finds that Policy ¶ 4(a)(i) has been satisfied.

### Rights to or Legitimate Interests

Complainant is able to establish a prima facie case by showing that Respondent does not qualify for the three "safe harbors" provided under Policy ¶¶ 4(c)(i)-(iii). Such a showing shifts Complainant's burden to Respondent, who must come forward with evidence rebutting Complainant's allegations in order to prevail on this element. In this case, Complainant has made a prima facie showing that Respondent does not have any rights or legitimate interests in the disputed domain name. See *Compagnie Generale des Matieres Nucleaires v. Greenpeace Int'l*, D2001-0376 (WIPO May 14, 2001) ("Proving that the Respondent has no rights or legitimate interests in respect of the Domain Name requires the Complainant to prove a negative. . . . [I]t is sufficient for the Complainant to show a prima facie case and the burden of proof is then shifted [to the] Respondent."); see also *G.D. Searle v. Martin Mktg.*, FA 118277 (Nat. Arb. Forum Oct. 1, 2002) (holding that where a complainant has asserted that a respondent has no rights or legitimate interests with respect to the domain name it is incumbent on the respondent to come forward with concrete evidence rebutting this assertion because this information is "uniquely within the knowledge and control of the respondent").

Because Respondent has failed to submit a response in this proceeding, the Panel may accept as true all reasonable allegations submitted by Complainant in the Complaint. Furthermore, since Complainant has made a prima facie showing that Respondent does not have any rights or legitimate

interests in the disputed domain name, the burden is shifted to Respondent to demonstrate that it has rights or legitimate interests in the domain name. In this proceeding, Respondent has not submitted a response. Thus, Respondent has failed to present any circumstances under which it could substantiate rights or legitimate interests in the disputed domain name. *See Geocities v. Geociites.com*, D2000-0326 (WIPO June 19, 2000) (finding that the respondent has no rights or legitimate interests in the domain name because it never submitted a response or provided the panel with evidence to suggest otherwise); *see also Bayerische Motoren Werke AG v. Bavarian AG*, FA 110830 (Nat. Arb. Forum June 17, 2002) (finding that in the absence of a response the panel is free to make inferences from the very failure to respond and assign greater weight to certain circumstances than it might otherwise do).

Respondent is not using the disputed domain name for any purpose. Therefore, it cannot be said to be making a bona fide offering of goods or services, nor can it be said to be making a legitimate noncommercial or fair use of the domain name. In these circumstances, Policy ¶¶ 4(c)(i) and (iii) are inapplicable to Respondent. *See Vestel Elektronik Sanayi ve Ticaret AS v. Kahveci*, D2000-1244 (WIPO Nov. 11, 2000) ("[M]erely registering the domain name is not sufficient to establish rights or legitimate interests for purposes of paragraph 4(a)(ii) of the Policy."); *see also Pharmacia & Upjohn AB v. Romero*, D2000-1273 (WIPO Nov. 13, 2000) (finding no rights or legitimate interests where the respondent failed to submit a response to the Complaint and made no use of the domain name in question); *see also Ziegenfelder Co. v. VMH Enter., Inc.*, D2000-0039 (WIPO Mar. 14, 2000) (finding that failure to provide a product or service or develop the site demonstrates that a respondent has not established any rights or legitimate interests in the disputed domain name).

No evidence before the Panel suggests Respondent is commonly known by the <testpreview.com> domain name under Policy ¶ 4(c)(ii). Respondent's WHOIS information indicates that the registrant of the disputed domain name is known as "LaPorte Holdings, Inc." and is not known by the confusingly similar second-level domain that infringes on Complainant's TESTPREPREVIEW.COM mark. Moreover, Respondent is not authorized or licensed to use Complainant's mark for any purpose. Thus, the Panel finds that Respondent has no rights or legitimate interests in the disputed domain name under Policy ¶ 4(a)(ii). *See Tercent Inc. v. Yi*, FA 139720 (Nat. Arb. Forum Feb. 10, 2003) (stating "nothing in Respondent's WHOIS information implies that Respondent is 'commonly known by' the disputed domain name" as one factor in determining that Policy ¶ 4(c)(ii) does not apply); *see also RMO, Inc. v. Burbridge*, FA 96949 (Nat. Arb. Forum May 16, 2001) (interpreting Policy ¶ 4(c)(ii) "to require a showing that one has been commonly known by the domain name prior to registration of the domain name to prevail"); *see also Gallup Inc. v. Amish Country Store*, FA 96209 (Nat. Arb. Forum Jan. 23, 2001) (finding that a respondent does not have rights or legitimate interests in a domain name when the respondent is not known by the mark).

The Panel finds that Policy ¶ 4(a)(ii) has been satisfied.

### Registration and Use in Bad Faith

While each of the four circumstances listed under Policy ¶ 4(b), if proven, evidences bad faith use and registration of the domain name, additional factors can also be used to support findings of bad faith. *See Twentieth Century Fox Film Corp. v. Risser*, FA 93761 (Nat. Arb. Forum May 18, 2000) (finding that in determining if a domain name has been registered in bad faith, the Panel must look at the "totality of circumstances"); *see also Do The Hustle, LLC v. Tropic Web*, D2000-0624 (WIPO Aug. 21, 2000) ("[T]he examples [of bad faith] in Paragraph 4(b) are intended to be illustrative, rather than exclusive.").

Respondent has not used the <testpreview.com> domain name, which is confusingly similar to Complainant's TESTPREPREVIEW.COM mark, since Respondent registered the domain name almost eight months ago. Such passive holding of a domain name that is confusingly similar to Complainant's mark evidences bad faith use and registration under Policy ¶ 4(a)(iii). *See Phat Fashions v. Kruger*, FA 96193 (Nat. Arb. Forum Dec. 29, 2000) (finding bad faith under Policy ¶ 4(a)(iii) even though the respondent had not used the domain name because "[i]t makes no sense whatever to wait until it actually 'uses' the name, when inevitably, when there is such use, it will create the confusion described in the Policy"); *see also Alitalia–Linee Aeree Italiane S.p.A v. Colour Digital*, D2000-1260 (WIPO Nov. 23, 2000) (finding bad faith where the respondent made no use of the domain name in question, and there were no other indications that the respondent could have registered and used the domain name in question for any non-infringing purpose); *see also Caravan Club v. Mrgsale*, FA 95314 (Nat. Arb. Forum Aug. 30, 2000) (finding that Respondent made no use of the domain name or website that connects with the domain name, and that passive holding of a domain name permits an inference of registration and use in bad faith).

The Panel finds that Policy ¶ 4(a)(iii) has been satisfied.

**DECISION**

Complainant having established all three elements required under the ICANN Policy, the Panel concludes that relief should be **GRANTED**.

Accordingly, it is Ordered that the <testpreview.com> domain name be **TRANSFERRED** from Respondent to Complainant.

Louis E. Condon, Panelist
Dated: March 15, 2005